2013 OK CR 16

**The STATE of Oklahoma, Appellant,**

v.

**Denzel SALATHIEL, Appellee.**

No. S–2012–623.

Court of Criminal Appeals of Oklahoma.

Sept. 30, 2013.

Douglas Parr, attorney at law, Oklahoma City, OK, attorney for defendant/appellee at trial and appeal.

David R. Nichols, Assistant District Attorney, Oklahoma City, OK attorney for the state/appellant at trial and appeal.

## OPINION

C. JOHNSON, Judge.

¶ 1 On November 19, 2009, Appellee, Denzel Dean Salathiel, pled guilty to Actual Physical Control of a Motor Vehicle While Under the Influence of Intoxicants, a misdemeanor (47 O.S.Supp.2006, § 11–902(A), (C)(1)) in Oklahoma County District Court Case No. CM–2008–4007.[1] Pursuant to the plea agreement, and as permitted by 22 O.S.Supp.2005, § 991c, the court deferred imposition of judgment for two years, subject to Appellee's successful compliance with standard conditions of probation. Appellee completed the two-year probationary period without incident, and the case was subsequently dismissed.

¶ 2 On February 22, 2012, Appellee was arrested in Oklahoma County for Driving Under the Influence of Intoxicants (47 O.S. 2011, § 11–902(A), (C)(2)), and he was formally charged on March 28, 2012 in Oklahoma County District Court Case No. CF–2012–1892. To elevate this crime from a misdemeanor to a felony, the State alleged that Appellee had previously committed a violation of § 11–902, as charged in CM–2008–4007.[2] Appellee filed a Demurrer and Motion to Dismiss, alleging that the State could not lawfully enhance the 2012 DUI charge with his plea in CM–2008–4007, be-

---

1. The offense was alleged to have occurred on or about September 17, 2008.

2. The statute in question equally punishes those who "drive, operate, or [are] in actual physical control of a motor vehicle" on designated roadways in the State while they are under the influence of intoxicants (or, alternatively, while having a specified concentration of alcohol in their blood or breath). A person may thus be convicted of "APC" (Actual Physical Control) instead of "DUI" (Driving Under the Influence) if he was intoxicated and behind the wheel of an operable motor vehicle, even if the vehicle was not in motion; but the two crimes are interchangeable for our purposes here, as a prior conviction for one can be used to enhance punishment for the other. *See generally* 47 O.S.Supp.2011, § 11–902. In this opinion, the term "DUI" or "DUI offense" is used as a generic label for a prosecution under this statute, regardless of theory.

cause Appellee had successfully completed the terms of the deferred judgment in that case. The State filed a brief in response. On June 19, 2012, the Honorable Larry Jones, Special Judge, sustained Appellee's motion. The State appealed that ruling to the district court pursuant to 22 O.S.2011, § 1089.1 et seq. On July 10, 2012, the Honorable Glenn M. Jones, District Judge, affirmed the magistrate's ruling. The State now appeals the district court's ruling to this Court, pursuant to 22 O.S.2011, § 1089.7. The case was automatically assigned to our Accelerated Docket. Rule 11.2(A), *Rules of the Oklahoma Court of Criminal Appeals*, 22 O.S., Ch. 18, App. (2012). Oral argument was held February 14, 2013.

¶ 3 This appeal requires us to interpret language in 47 O.S. § 11–902, Oklahoma's Driving Under the Influence (or "DUI") statute—specifically, changes to the statute which took effect November 1, 2011, between the time of Appellee's two prosecutions thereunder. At all times relevant to Appellee's first prosecution in 2008–09, a first DUI offense was a misdemeanor; a person faced felony punishment only if he had been "convicted" of a DUI offense within the ten years preceding the commission of the new offense. 47 O.S.Supp.2006, § 11–902(C)(2). The 2011 amendment, however, permits felony enhancement not only with a prior *conviction* for a DUI offense, but also with any prior plea of guilty or *nolo contendere* to such offense, even if the plea never resulted in a judgment:

> Any person who, during the period of any court-imposed probationary term or within ten (10) years of the date following the completion of the execution of any sentence *or deferred judgment* for a violation of this section or a violation pursuant to the provisions of any law of this state or another state prohibiting the offenses provided in subsection A of this section, ... commits a second offense pursuant to the provisions of this section or has a prior conviction in a municipal criminal court of record for the violation of a municipal ordi-

nance prohibiting the offense provided for in subsection A of this section and within ten (10) years of the date following the completion of the execution of such sentence *or deferred judgment* commits a second offense pursuant to the provisions of this section shall, upon conviction, be guilty of a felony ...

47 O.S.2011, § 11–902(C)(2) (emphasis added). The 2011 amendment also added a new paragraph, which underscores the change:

> Any plea of guilty, nolo contendere or finding of guilt for a violation of this section or a violation pursuant to the provisions of any law of this state or another state prohibiting the offenses provided for in subsection A of this section, Section 11–904 of this title, or paragraph 4 of subsection A of Section 852.1 of Title 21 of the Oklahoma Statutes, *shall constitute a conviction of the offense for the purpose of this section* for a period of ten (10) years following the completion of any court-imposed probationary term.

47 O.S.2011, § 11–902(M) (emphasis added).[3]

¶ 4 As stated above, Appellee's 2009 plea was entered as part of a deferred-judgment agreement, authorized by 22 O.S. § 991c. In 1970, the Oklahoma Legislature created this procedure whereby the court could "defer" the rendition of judgment in a criminal case for a period of time. Typically, a judgment is deferred in exchange for the defendant's plea of guilty or *nolo contendere*, and his agreement to abide by certain conditions for a specified period of time. Unlike the district court's authority to suspend execution of a sentence, *see* 22 O.S.2011, § 991a, where judgment of guilt is rendered but the execution of the sentence is "suspended" in whole or in part, on conditions of probation, under a deferred-judgment procedure no judgment of guilt is rendered unless and until the defendant violates the terms of the agreement.

¶ 5 Although the statute has been amended several times over the years, the

3. The 2011 amendment also extended the ten-year viability period for a prior DUI offense, from ten years after the date of the prior conviction, to ten years after completion of any sentence or probation received for same. *Compare* 47 O.S.Supd.2009. § 11–902(C)(2) *with* 47 O.S.2011, § 11–902(C)(2), (M). That change has no bearing on our disposition of this case, however.

basic mechanics of § 991c have remained unchanged:

> Upon a verdict or plea of guilty or upon a plea of nolo contendere, *but before a judgment of guilt*, the court may, *without entering a judgment of guilt* and with the consent of the defendant, defer further proceedings upon the specific conditions prescribed by the court not to exceed a five-year period....

> Upon completion of the conditions of the deferred judgment, ... the defendant shall be discharged *without a court judgment of guilt*, and the court shall *order the verdict or plea of guilty or plea of nolo contendere to be expunged from the record and the charge shall be dismissed with prejudice to any further action* ....

22 O.S.Supp.2005, § 991c(A), (C).[4] If the defendant violates any condition to the deferred judgment procedure, the court may proceed to enter judgment of guilt (which, in cases involving a previously-tendered guilty or *nolo* plea, requires the court to first "accept" that plea). 22 O.S.Supp.2005, § 991c(E). On the other hand, a defendant who successfully completes the terms of the deferred-judgment agreement is entitled, by operation of law, to have the entire proceeding—including any tendered guilty plea—expunged from the record. 22 O.S.Supp.2005, § 991c(C). Moreover, such expungement is expressly declared by the Legislature to have retroactive effect. 22 O.S.Supp.2005, § 991c(D).

¶ 6 The 2011 amendments to the DUI statute, 47 O.S. § 11–902, prompted the State to seek enhanced punishment for Appellee's 2012 DUI prosecution, using his guilty plea to a DUI offense in November 2009. In the State's view, the fact that Appellee had successfully completed his part of the deferred-judgment agreement in the prior case was made irrelevant by the intervening changes in the DUI law. Appellee challenged this interpretation under several theories. First, he argued that treating his 2009 guilty plea as tantamount to a "conviction" violated a basic rule of statutory construction, *i.e.*, that

statutes should not be given retroactive effect unless their language expressly declares otherwise. Alternatively, Appellee argued that application of the 2011 amendment, to a guilty plea made in 2009, would violate his constitutional guarantees against *ex post facto* laws, bills of attainder, and impairments to his ability to contract. *See* Okla. Const. Art. 2, § 15 ("No bill of attainder, ex post facto law, nor any law impairing the obligation of contracts, shall ever be passed").

■ ¶ 7 Both the examining magistrate and the district judge agreed that the State should not be allowed to use Appellee's prior guilty plea for enhancement. In its written order, the district court concluded that doing so would constitute an *ex post facto* violation, as it "increase[s] statutory punishment for the crime, [and] changes the collateral consequence[s] of the defendant's plea and deferred judgment which he expected pursuant to statutes then in existence." (O.R. 48) We review the district court's ruling for an abuse of discretion. *State v. Swicegood,* 1990 OK CR 48, ¶ 7, 795 P.2d 527, 529. While we agree with the tenor of the district court's reasoning, we reach the same conclusion it did using a slightly different legal rationale.

■■ ¶ 8 It is a fundamental rule of statutory construction that intervening changes in the law should only be applied prospectively from their effective date, unless the Legislature has specifically declared that they have retroactive effect. *Nestell v. State,* 1998 OK CR 6, ¶ 5, 954 P.2d 143, 144; *State v. Watkins,* 1992 OK CR 50, ¶ 5, 837 P.2d 477, 478. The common-law presumption against retroactive application of statutes, and the constitutional proscriptions against *ex post facto* laws, bills of attainder, and impairments of contract, are all variations on a common theme in our law. They balance the Legislature's authority to enact laws with the ideas of adequate notice, reasonable reliance, and fair play.

¶ 9 Below and on appeal, the State correctly observes that the 2011 amendment to § 11–902 does not purport to criminalize con-

---

4. Although § 991c has been amended since Appellee's 2009 deferred judgment, those changes have no bearing on the issues presented here.

duct committed before its enactment. In other words, the State is not attempting to re-prosecute Appellee, or to punish him any further, for any DUI offense in 2008. Rather, the 2011 amendments re-define what kind of evidence can be used to enhance punishment for a new offense. It might be said that after November 1, 2011 (the effective date of the amendment), anyone who gets behind the wheel, while under the influence of intoxicants, is on notice that his guilty plea to a past DUI offense could be used to enhance punishment—even if no judgment of guilt had ever been entered and the matter had been expunged. In that sense, certainly, the changes to the statute have prospective effect.

■ ¶ 10 However, "[a] law is retroactive if it changes the legal consequences of acts completed before its effective date." *Miller v. Florida,* 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987) (citations omitted). By re-defining what counts as a "conviction" for purposes of enhancing a DUI offense to a felony, the amendment to § 11–902 changes the legal effect of conduct undertaken by the parties (the State and the defendant) at some time in the past. Before the amendment, any defendant who pled guilty or *nolo contendere* to a misdemeanor DUI offense, pursuant to a deferred-judgment agreement, could reasonably rely on the promise of 22 O.S. § 991c: that his successful compliance with the agreement would, in effect, erase the matter from his record. Clearly, any defendant in that position *today,* after the effective date of the amendment to 47 O.S. § 11–902, would be on notice that the matter might be used against him anyway, were he to commit another such offense within ten years. But before November 2011, that potential outcome would have been completely contrary to the parties' understanding of a deferred-judgment plea agreement in a misdemeanor DUI case.

¶ 11 The United States Supreme Court addressed a similar situation in *I.N.S. v. St. Cyr,* 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). In that case, the respondent, a Haitian citizen with permanent-resident status in the United States, pled guilty in state court to a drug offense. Although the resulting conviction made him deportable under federal immigration law, at the time the law also gave the United States Attorney General the discretion to waive deportation in the respondent's circumstances. After the respondent entered his plea, Congress enacted new laws which removed the Attorney General's authority to grant such waivers. The respondent argued that it was unfair to apply that change in immigration law retrospectively, to aliens who had pled guilty in reliance on the law as it existed at the time of their pleas.

¶ 12 The federal district court agreed with the respondent. So did the court of appeals. And ultimately, the Supreme Court did too. The Court observed that "[r]etroactive statutes raise special concerns," because of the government's "unmatched powers ... to sweep away settled expectations." *Id.,* 533 U.S. at 315, 121 S.Ct. at 2287. Consequently, a presumption against retroactive application of statutes is "deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." 533 U.S. at 316, 121 S.Ct. at 2288. Because of this presumption, the Court said, a statute may not be applied retroactively "absent a clear indication from Congress that it intended such a result." *Id.* The standard for finding such a clear indication is "a demanding one"; the Court observed that in past cases where retroactive application was countenanced, the statutory language was "so clear that it could sustain only one interpretation." 533 U.S. at 316–17, 121 S.Ct. at 2288.

■ ¶ 13 After a careful examination of the laws in question, *see* 533 U.S. at 317–320, 121 S.Ct. at 2288–2290, the Supreme Court found no express indication that Congress intended retroactive effect of the provision at issue. The Court then considered the more fundamental question: whether the statute actually did operate retroactively at all. Whether a statute operates retroactively, the Court held, "demands a commonsense, functional judgment about whether the new provision attaches new legal consequences to events completed before its enactment." 533 U.S. at 321, 121 S.Ct. at 2290 (quotation and citation omitted). "[W]hether a particular statute acts retroactively should be informed

and guided by familiar considerations of fair notice, reasonable reliance, and settled expectations." 533 U.S. at 321, 121 S.Ct. at 2291 (quotation and citations omitted).

 · ¶ 14 The fact that *St. Cyr* involved a plea of guilty was important to the result. "Plea agreements involve a *quid pro quo* between a criminal defendant and the government," the Court observed, where the defendant waives constitutional rights and grants the government tangible benefits, such as avoiding the effort and expense of a trial. 533 U.S. at 321–22, 121 S.Ct. at 2291. The Court found historical evidence for concluding that "alien defendants considering whether to enter into a plea agreement [were] acutely aware of the immigration consequences of their convictions," and indeed, that the alien defendant's right to remain in the United States "may be more important [to him] than any potential jail sentence." 533 U.S. at 322–23, 121 S.Ct. at 2291 (quotation and citation omitted). Retroactive application of the change in federal immigration law would have removed a tangible benefit that Mr. St. Cyr undoubtedly relied upon in deciding to enter a plea in the first place. 533 U.S. at 325, 121 S.Ct. at 2293. The Court refused to read the new law to allow such a result, absent clear legislative intent to the contrary. 533 U.S. at 326, 121 S.Ct. at 2293.

 ¶ 15 Like *St. Cyr*, the case before us involves a defendant who pled guilty to a crime based on a certain understanding of the possible outcomes—outcomes that were subsequently altered by operation of law. We find nothing in the 2011 amendment to 47 O.S. § 11–902 which clearly declares that the enhancement language at issue here shall have retrospective effect. We therefore conclude that the amendment's re-definition of what constitutes a prior DUI "conviction" applies only to pleas of guilty or *nolo contendere* entered after the effective date of the 2011 amendment itself. Having reviewed the thorough analyses conducted by both the examining magistrate and the district judge, we find no abuse of discretion therein. Because we base our conclusion on rules of statutory construction, we need not decide, at this time, whether the amendments in question would violate constitutional guarantees against *ex post facto* laws, bills of attainder, or impairments to the obligations of contracts. *See Reimers v. State ex rel. Dept. of Corrections*, 2011 OK CIV APP 83, ¶¶ 29–32, 257 P.3d 416, 420–21.

## DECISION

¶ 16 The district court's order affirming the magistrate's ruling is **AFFIRMED.** Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2013), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

LEWIS, P.J.: dissent.

SMITH, V.P.J. and A. JOHNSON, J.: concur.

LUMPKIN, J.: specially concur.

LEWIS. P.J., Dissenting.

¶ 1 I respectfully dissent. The Legislature acted well within its power when it provided that Appellee's second offense of D.U.I., within ten (10) years after a D.U.I.-related deferred judgment, shall be a felony. 47 O.S.2011, § 11–902(C)(2) Neither the *ex post facto* prohibition, nor any other constitutional limitation, prohibits this prosecution against the Appellee. The governing principle here was expressed long ago in Thomas Cooley's treatise, *Constitutional Limitations*, 273 (1868):

> [A] law is not objectionable as *ex post facto* which, *in providing for the punishment of future offences, authorizes the offender's conduct in the past to be taken into account, and the punishment to be graduated accordingly.* Heavier penalties are often provided by law for a second or any subsequent offence than for the first; and it has not been deemed objectionable that, in providing for such heavier penalties, *the prior conviction authorized to be taken into account may have taken place before the law was passed.* In such case, it is the second or subsequent offence that is punished, not the first, (emphasis added).

¶ 2 Cooley's place in history limited his consideration of an offender's "conduct in the

past" to a "prior conviction," but modern probationary sentences like the deferred judgment are relevant evidence of past conduct that may properly result in greater punishment for subsequent offenses. Subsequent offenses can be charged as felonies, or subject to enhanced punishment, based on prior convictions, deferred judgments or even delinquency adjudications, including those that occurred before the effective date of the substantive enactment. *Jones v. State*, 9 Okl.Cr. 646, 133 P. 249, 251 (1913)(second offense of violating prohibitory act could be charged as felony based on prior conviction sustained before effective date of enhanced penalty for repeat offenses) (*quoting Ex Parte Gutierrez*, 45 Cal. 429 (Cal. 1873) (finding provision making second offense of petit larceny a felony is not ex post facto, as applied to one who committed the first offense prior to effective date of amendment)).

¶ 3 In *People v. Hainline*, 219 Cal. 532, 28 P.2d 16 (1934), the appellant received probation for his first offense of burglary, under a law providing that upon successful completion, he would be allowed to change his plea and have the case dismissed (an early version of the deferred judgment). An amendment to what was then called simply called the "Probation Act" provided that "in any subsequent prosecution of such defendant for any other offense such prior conviction may be pleaded and proved and shall have the same effect as if probation had not been granted or the accusation or information dismissed." *Id.* at 17.

¶ 4 Appellant completed the term of probation, withdrew his plea, and the case was dismissed. He was later charged with other burglaries as a habitual offender, the State alleging his prior "probation" sentence as the prior conviction. The California Supreme Court, citing *Ex Parte Gutierrez* and Cooley's *Constitutional Limitations*, found that the enhancement was entirely proper:

> [T]here is no just or logical reason why a probationer who has deliberately refused to accept the advantages with which the rehabilitating provisions of the law clothe him, and has returned to a life of crime, should be heard to invoke the benefits of a grace which saved him from the stigma of felony and which was conferred upon him in consideration of a pledge of future honest conduct and good citizenship. As a matter of comparative justice it would be giving to such a person an advantage above others who had never had the grace of probation extended to them upon conviction of their first offense . . .
>
> Conceding his term of probation had actually been completed before the amendment went into effect, we know of no legal grounds upon which he could rest his claim of exemption from the penalties of the law as *to future crimes committed by him*. The probationary law was not enacted with a purpose of immunizing the criminally inclined from the consequences of the penalties which substantive penal statutes mete out to habitual criminals generally. Said amendment simply and justly provides that persons who have refused to profit by the grace extended to them upon the first offense shall, upon conviction of a subsequent felony, suffer the penalty of the law as prescribed for the punishment of all other offenders. The amendment is not ex post facto and violates no constitutional provisions of the federal or state government, and is in harmony with our statutes. It provides clearly for the punishment of future crimes.

*Id.* at 17–18 (emphasis added). *See also* 21 O.S.2011, § 1283(D) (possession of a firearm by a person who was, within the last ten (10) years, adjudicated delinquent, for an offense that would be felony if committed by an adult, is a felony); *State v. Grillo*, 661 N.W.2d 641, 644–45 (Minn.App.2003)(finding statute criminalizing firearm possession after juvenile adjudication was not *ex post facto*; statute did not punish past conduct and provided notice that future act of firearm possession was prohibited).

¶ 5 Very similar to *People v. Hainline* is *State v. Preuett*, 116 Wash.App. 746, 67 P.3d 1105 (2003), where the Washington Court of Appeals found defendant's vehicular homicide conviction properly enhanced with a prior deferred prosecution for D.U.I., under a statute enacted *after defendant completed the deferred prosecution*, but prior to the

subsequent vehicular homicide charge. The Court found "no due process requirement that [defendant] receive written notice when the legislature amended the vehicular homicide statute to include deferred prosecutions as enhancements. He is deemed on notice *upon the effective date of the amended statute.*" *Id.* at 1107 (emphasis added). The Court also found no *ex post facto* violation, noting that the law "does not increase or enhance punishment for a crime committed before the effective date of the statute ... and [defendant] could have avoided the impact of [the amended statute] by restraining himself from committing vehicular homicide." *Id.* at 1108.

¶ 6 Appellee in this case knew of his prior deferred judgment and was bound to take notice of the law making a subsequent D.U.I., a felony. *Jones,* 9 Okl.Cr. at 648–49, 133 P. at 251 (finding "appellant knew of his previous conviction, and he was bound to take notice of the law" making second offense a felony). Section 11–902(C)(2) requires nothing more than proof of a prior *deferred judgment* within the time limitation to enhance a second D.U.I. offense to a felony. Appellee has a prior deferred judgment, and is thus subject to a felony charge under the plain language of section 11–902(C)(2). "Where the language of a statute is plain and unambiguous and the meaning clear and unmistakable, there is no construction, and no justification exists for interpretative devices to fabricate a different meaning." *McBrain v. State,* 1988 OK CR 261, ¶ 11, 764 P.2d 905, 908.

¶ 7 Regardless of what the Appellee might have supposed when he received a deferred judgment, the Legislature has changed the law, perhaps for good reason. The Legislature may properly conclude those with a

prior deferred judgment for D.U.I., represent a special threat and should be punished more severely if they re-offend.[1] Section 11–902(C)(2) is not constitutionally infirm as applied here.[2] The order of the district court sustaining the Appellee's demurrer is in error, and should be reversed.

LUMPKIN, Judge, Specially Concur.

¶ 1 I concur in the Court's decision to affirm the District Court's decision but write separately to clarify why neither 47 O.S.2011, § 11–902(C)(2) nor 47 O.S.2011, § 11–902(M) apply to Appellee's case.

¶ 2 "[T]he presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." *Landgraf v. USI Film Products,* 511 U.S. 244, 265, 114 S.Ct. 1483, 1497, 128 L.Ed.2d 229 (1994). "Retroactive legislation presents problems of unfairness that are more serious than those posed by prospective legislation, because it can deprive citizens of legitimate expectations and upset settled transactions." *General Motors Corp. v. Romein,* 503 U.S. 181, 191, 112 S.Ct. 1105, 1112, 117 L.Ed.2d 328 (1992). Thus, the general common law rule of statutory construction is that statutes and amendments are to be construed to operate only prospectively unless the legislature clearly expresses an intent to the contrary. *State v. Watkins,* 1992 OK CR 50, ¶ 5, 837 P.2d 477, 478 (*citing Welch v. Armer,* 1989 OK 117, ¶ 27, 776 P.2d 847, 850).

¶ 3 Recently the Oklahoma Supreme Court in *Starkey v. Oklahoma Department of Corrections,* 2013 OK 43, 305 P.3d 1004, addressed these same concerns. "[A]ll statutes are to be construed as having a prospective operation unless the purposes and intention of the Legislature to give them a retrospec-

1. The distinction is far-reaching. A true first offender who kills another while in the commission of D.U.I. would be subject to a charge of first-degree misdemeanor manslaughter. 21 O.S.2011, § 711. The Legislature might logically conclude that one who re-offends after a prior deferred for D.U.I. and causes a fatality should suffer conviction for felony murder. 21 O.S. 2011, § 701.8(B).

2. Because Appellant's prior deferred judgment for a D.U.I. offense is *in itself* sufficient to en-

hance his second D.U.I. offense to a felony under the plain language of section 11–902(C)(2), the language in section 11–902(M) providing that "any plea of guilty, nolo contendere or finding of guilt" to certain offenses "shall constitute" a criminal conviction is unnecessary to the determination of this action. The State is not required to prove that Appellee has a prior "conviction" to charge Appellee with a felony D.U.I. I therefore express no opinion upon application of section 11–902(M).

tive effect is expressly declared, or is necessarily implied from the language used." *id.,* 2013 OK 43, ¶ 24, 305 P.3d at 1014, *quoting Good v. Keel,* 1911 OK 264, ¶ 4, 29 Okla. 325, 116 P. 777, 777.

> "[l]aws are generally construed as applicable to future conditions, and are not to be allowed a retroactive effect unless such intention upon the part of the Legislature is so clearly expressed that no other construction can be fairly given ... While retrospective legislation may, in some cases, be upheld, the words of a statute ought not to have a retrospective operation unless they are so clear and imperative that no other meaning can be annexed to them, or unless the intention of the Legislature cannot be otherwise satisfied."

*Id.,* 2013 OK 43, ¶ 25, 305 P.3d at 1015, *quoting Adair v. McFarlin,* 1911 OK 129, ¶ 5, 28 Okla. 633, 115 P. 787, 788. " '[S]tatutes will not be given a retroactive effect if any other reasonable construction is possible.' " *Id.,* 2013 OK 43, ¶ 27, 305 P.3d at 1015, *quoting Casey v. Bingham,* 1913 OK 321, ¶ 4, 132 P. 663, 665. " 'In every case of doubt the doubt must be resolved against the retrospective effect.' " *Id., quoting Good v. Keel,* 1911 OK 264, ¶ 4, 116 P. at 777.

¶ 4 This Court's precedent is consistent with these pronouncements.[1] "Intervening changes in the law and new legislative enactments should only be applied prospectively from their effective date, unless they are specifically declared to have retroactive effect." *Nestell v. State,* 1998 OK CR 6, ¶ 5, 954 P.2d 143, 144 *(citing Ferrell v. State,* 1995 OK CR 54, ¶ 6, 902 P.2d 1113, 1114; Okla. Const. art. 5, § 58.).

¶ 5 Turning to the present case, I find nothing within the plain language of the 2011 amendments to § 11–902 from which this Court could interpret a clear expression that the Legislature intended for the intervening changes to subsections (C)(2) and (M) to have retroactive application. Nothing within the language of the amendments to the statute necessarily implies intent for retroactive ef-

fect, there is a reasonable construction otherwise, and these doubts must be resolved against retroactive effect.

¶ 6 As a result, the statutory changes only apply prospectively from their effective date and do not apply to Appellee's prior plea of guilty or his prior deferred judgment which occurred prior to the amendment of the statute. *Landgraf,* 511 U.S. at 265, 114 S.Ct. at 1497 ("[T]he principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal.") (quotations and citation omitted).

¶ 7 This should be the end of the Court's analysis, however, the Opinion unnecessarily examines § 11–902 utilizing language from cases that analyze an *ex post facto* violation. Having determined that the statute does not have retroactive application, this Court does not decide whether it violates the prohibition against *ex post facto* laws. *See Castillo v. State,* 1998 OK CR 9, ¶¶ 7–8, 954 P.2d 145, 147 ("Petitioner cannot complain that the Act violates the constitutional prohibitions against ex *post facto* laws when the sentencing matrixes of the Act are *not* retroactive in application."). Because the presumption against statutory retroactivity is a separate determination from an *ex post facto* analysis this part of the Opinion only serves to muddy the water. *See Landgraf,* 511 U.S. at 266–68, 114 S.Ct. at 1497–98 (discussing the limited scope of the Constitutional restrictions on retroactive legislation in contrast to the requirement that Congress first make clear, its intention that the legislation have retroactive application).

¶ 8 The Opinion needlessly examines the "legal consequences" of the amendments as a means of determining when the statutory provisions actually take effect. This is not part of this Court's test or common law statutory construction analysis. The Court need look no further than the historical discussion of this long standing rule to answer this question. "When the statute is silent, it must be presumed that it was the intention

---

1. However, this Court is also bound by 22 O.S. 2011, § 3, as to the criminal procedure code. *Cox v. State,* 2006 OK CR 51, ¶¶ 13–17, 152 P.3d 244, 249–51. Section 3 states "No part of this code is retroactive unless expressly so declared."

In the absence of an express declaration, this Court must construe amendments to the criminal procedure code as operating prospectively only. *Cox,* 2006 OK CR 51, ¶ 17, 152 P.3d at 251.

to limit its operations to the period of time when it took effect, and to fasten its provisions only upon such proceedings as might be commenced thereafter." *Adair*, 1911 OK 129, ¶ 9, 115 P. at 789 (quotations and citation omitted). There is no reason to go further and examine any "legal consequences."

¶ 9 As the 2011 amendments to § 11–902 apply prospectively from their effective date, then the amendments only apply to proceedings commenced after the enactment of the amendments. This means that neither the amended subsection (C)(2) nor subsection (M) apply to Appellee's plea of guilty or his deferred judgment because those proceedings were commenced before the enactment of the statutory amendments. However, the statutory provisions that were in effect at the time of Appellee's 2008 Actual Physical Control offense remain applicable to him.