2013 OK 97

Christopher LUSTER, Plaintiff/Appellee,

v.

The STATE of Oklahoma ex rel., DEPARTMENT OF CORRECTIONS, Defendant/Appellant.

No. 109883.

Supreme Court of Oklahoma.

Nov. 19, 2013.

Dustin S. Phillips, Mark K. Bailey, Adam R. Banner, and Ryan V. Coventon, Oklahoma City, Oklahoma, for Plaintiff/Appellee.

Larry Foster, II, Oklahoma Department of Corrections, Oklahoma City, Oklahoma, for Defendant/Appellant.

COMBS, J.

¶ 1 Plaintiff/Appellee, Christopher Luster (hereinafter "Luster") pled guilty to Sexual Assault in the Second Degree on April 22, 1992, in Carson County, Texas. According to the Defendant/Appellant, The State of Oklahoma, ex rel., Department of Corrections (hereinafter "Department") the crime would constitute Lewd or Indecent Proposals/Acts to a Child under Oklahoma law; a crime which is covered under the Sex Offender Registration Act (hereinafter "SORA") 57 O.S., § 581 *et seq.* Luster received a ten-year deferred adjudication and moved to Oklahoma sometime after his plea.[1] Luster began registering as a sex offender in Oklahoma on September 25, 2003. At that time, SORA required sex offenders, other than habitual or aggravated sex offenders, to register for ten years after release from incarceration.[2] Effective November 1, 2007, SORA was amended to create a three tier sex offender risk level system.[3] HB 1760, 2007 Okla. Sess. Laws c. 261 (eff. November 1, 2007). Thereafter, the Department notified Luster he was now designated a level three sex offender and would have to register for life.

¶ 2 On March 11, 2011, Luster filed a Petition for Temporary and Permanent Injunction, Temporary Restraining Order, and Declaratory Relief requesting the court enjoin the Department from enforcing SORA against him. He requested to be removed

---

1. The record does not reflect when Luster actually moved to Oklahoma.

2. Luster was not found to be a habitual or aggravated sex offender. At the time he began to register, persons, other than habitual or aggravated sex offenders, were required to register under SORA for ten years following release from incarceration (Title 57 O.S. Supp.2002, §§ 582 and 583(C) and (D)). Since SORA's inception in 1989 (HB 1136, 1989 Okla. Sess. Laws. c. 212) to the time Luster began registering (September 25, 2003), the registration period was no greater than 10 years, except for habitual or aggravated sex offenders.

3. SORA was amended to require the Department of Corrections or a court to assign a numeric risk level to a person "who will be subject to the provisions of the Sex Offenders Registration Act." Title 57 O.S. Supp.2007, §§ 582.1–582.2. Section 583 was also amended to set the registration period for the three levels. It provided "a person [who] has been convicted or received probation within the State of Oklahoma ... shall be required to register" for 15 years if the person is a level 1 offender, 25 years for a level 2 offender, and for life if a person is a level 3 offender or classified as a habitual or aggravated sex offender. Title 57 O.S. Supp.2007, § 583(C) and (D). The Legislature passed an emergency measure 6 months later to require a risk assessment be made for offenders who enter the state. 2008 Okla. Sess. Laws c. 94, § 1 (emerg. April 29, 2008).

from the registry and a finding he should no longer be required to register. In the alternative, he requested a finding that he only be required to register for 10 years which would end Sept. 23, 2013. He further requested the frequency of his registration be one time per year which was his requirement at the time of his conviction.

¶ 3 On May 20, 2011, the Department filed a Motion to Consolidate other sex offender cases with the present case. Luster objected to consolidation. The Motion resulted in a Journal Entry, filed July 22, 2011, consolidating 43 additional cases with this cause and a Consolidation Order, filed September 6, 2011, further consolidating 23 additional cases with this cause.

¶ 4 Thereafter, on August 3, 2011, Luster filed a new Petition for Temporary and Permanent Injunction, Temporary Restraining Order, and Declaratory Relief on behalf of all the consolidated plaintiffs. Luster grouped the now consolidated plaintiffs into three categories: 1) convictions occurring before November 1, 1999, 2) non-aggravated convictions occurring between November 1, 1999, and November 1, 2007, and 3) aggravated convictions occurring between November 1, 1999, and November 1, 2007.

¶ 5 For those plaintiffs convicted before November 1, 1999, Luster asserts there was no need to register because November 1, 1999, was the first time a specific registration period was enacted.[4] The 1999 amendments (underlines are additions and strikethroughs are deletions) to 57 O.S. Supp.1999, § 583, provided as follows:

C. ~~The~~ Except for habitual or aggravated sex offenders, the person shall be required to register for a period of ten (10) years and the information received pursuant to the registration with the Department of Corrections required by this section shall be maintained by the Department of Corrections for ~~a period of~~ at least ten (10) years from the date of registration.

D. ~~The~~ Except for habitual or aggravated sex offenders, the person shall be required to register for a period of ten (10) years and the information received pursuant to the registration with the local law enforcement authority required by this section shall be maintained by such authority for ~~five (5)~~ at least ten (10) years.

HB 1390, 1999 Okla. Sess. Laws c. 336, § 2 (eff.Nov.1, 1999).

Luster, however, acknowledges at the very most this category of plaintiffs should only be required to register for 10 years.

¶ 6 The second category of plaintiffs are the non-aggravated plaintiffs convicted between November 1, 1999, and November 1, 2007. Luster asserts persons convicted during this period should only have to register for no more than ten years. He contends the 2007 and 2008 amendments which created and amended the three-tier system of registration did not expressly mandate the amendments be applied retroactively.

---

4. This is incorrect. At its inception SORA had a maximum ten-year registration period. 57 O.S. Supp.1989, § 583 provided:

C. The registration required by this section shall be maintained by the Department of Corrections for a period of ten (10) years from the date of registration, however persons who successfully complete the sex offender treatment program provided by the Department of Corrections, shall only be required to register for two (2) years after date of discharge. Repeat offenders after discharge **shall be required to register for the full ten-year period.**
HB 1136, 1989 Okla. Sess. Laws c. 212, § 3 (eff.Nov.1, 1989).

In 1997, 57 O.S., § 583 was again amended as follows:

C. The registration with the Department of Corrections required by this section shall be maintained by the Department of Corrections for a period of ten (10) years from the date of registration; ~~however, persons who successfully complete the sex offender treatment program provided by the Department of Corrections, shall only be required to register with the Department for two (2) years after date of discharge. Repeat offenders after discharge shall be required to register for the full ten year period.~~
HB 1729, 1997 Okla. Sess. Laws c. 260, § 4 (eff.Nov.1, 1997).

It appears the Legislature intended to do away with the reduction in the registration period upon completion of the sex offender treatment program and not to eliminate the ten-year registration period. However, this amendment created ambiguity when it deleted the "full ten-year period" language. The amendment in 1999 (mentioned in paragraph 5 of this opinion) corrected that ambiguity.

¶ 7 The third category of plaintiffs consists of aggravated sex offenders convicted between November 1, 1999, and November 1, 2007. Luster indicates individuals labeled as "aggravated" sex offenders do not receive the protection of the ten-year registration requirement and are required to register for life. He cites 57 O.S. Supp.2002, § 584(H)(2) which provided:

> On or after November 1, 1999, any person who has been convicted of a crime or an attempt to commit a crime, received a suspended sentence or any probationary term, including a deferred sentence imposed in violation of subsection G of Section 991c of Title 22 of the Oklahoma Statutes, for a crime provided for in Section 7115 of Title 10 of the Oklahoma Statutes, if the offense involved sexual abuse or sexual exploitation as these terms are defined in Section 7102 of Title 10 of the Oklahoma Statutes, Section 885, 888, 1111.1, 1114 or 1123 of Title 21 of the Oklahoma Statutes shall be subject to all the registration requirements of this act and shall be designated by the Department of Corrections as an aggravated sex offender. An aggravated sex offender **shall be required to register for the lifetime of the aggravated sex offender.**
> HB 2300, 2002 Okla. Sess. Laws c. 51, § 2.[5] (Emphasis added).

Luster argued the level assignments created in 2007 also do not apply to these aggravated offenders for the same reasons they do not apply to the second category of plaintiffs. Further, he contended paragraph 2 of subsection H of Section 584 provides that an aggravated sex offender can only be a person convicted of violating Section 7115 of title 10 of the Oklahoma Statutes. He asserts the other referenced sections only relate to the location of the definitions of "sex abuse" and "sexual exploitation."

¶ 8 Luster requested the court issue an order finding: 1) each consolidated plaintiff be required to register under the provisions of SORA in effect at the time he or she pled guilty or was convicted; 2) the later enacted (2007) three-tiered level system should not be applied retroactively to these plaintiffs and any period of registration associated with the tier-levels be declared unconstitutional and be removed; and 3) only those individuals convicted of a crime under "10 O.S. § 7115" shall be labeled "aggravated" sex offenders.

¶ 9 The Department filed a Response Brief challenging plaintiffs' construction of the applicability of 57 O.S., § 584(H)(2) by limiting its provisions to only persons convicted of violating 10 O.S., § 7115. Further, it asserted the Legislature's intent was to apply all amendments to SORA retroactively.

¶ 10 The trial court's Order Granting Permanent Injunction Against The Oklahoma Department Of Corrections (hereinafter "Order") was filed September 7, 2011. It specifically found the amendments enacted after plaintiffs' dates of conviction could not be applied retroactively and granted the requested permanent injunction. Attached to the Order was a list of the consolidated plaintiffs.[6] The court specified which plaintiffs were to be immediately removed from the registry, which were to be removed at a future date and which were considered ag-

---

5. Title 57 O.S., § 584 was amended three times in 2002. HB 2300, 2002 Okla. Sess. Laws c. 20, § 3 (emerg.Feb.28, 2002); SB 1420, 2002 Okla. Sess. Laws c. 153, § 2 (eff. April 29, 2002); and SB 1537, 2002 Okla. Sess. Laws c. 235, § 2 (emerg. May 9, 2002). The language in paragraph (2) of subsection (H) was not amended in any of these bills. The language providing lifetime registration for aggravated sex offenders in paragraph (2) of subsection H was first enacted in 1999, by HB 1390, 1999 Okla. Sess. Laws c. 336, § 3 (eff.Nov.1, 1999) and not in 2002. Title 57 O.S. Supp.1998, § 583, was also amended in HB 1390. The amendment in this bill to subsection C of § 583 provided "[e]xcept for habitual or aggravated sex offenders, the person shall be required to register for a period of ten (10) years...." Therefore, by these amendments in HB 1390 (1999) the registration period for aggravated sex offenders had no ending period. It should be noted, that habitual sex offenders were already required to register for life. In 1998, 57 O.S., § 584(H)(1) was amended by HB 3144, 1998 Okla. Sess. Laws c. 347, § 2 (eff. November 1,1998), by changing the term "predatory" to "habitual" and requiring registration for habitual sex offenders to be for the lifetime of the offender.

6. The list curiously omits case CV–2011–1344, Will Frye (Oklahoma County, OK; J. Dixon) who was included in the September 6, 2011, Consolidation Order.

gravated sex offenders. The court also found that those who were not to be released from the obligation to register immediately would only be required to register once per year. In addition, the court found those sex offenders whose crimes were committed in another jurisdiction would only be required to register under the version of SORA in effect when they began residing in Oklahoma. The court also noted the constitutionality of SORA was not challenged in the plaintiffs' lawsuits and therefore was not addressed in the Order.[7] The Department appealed.

## STANDARD OF REVIEW

¶ 11 Issues of a statute's constitutional validity, construction and application are questions of law to be reviewed *de novo*. *Gilbert v. Security Finance Corp. of Oklahoma, Inc.*, 2006 OK 58, ¶ 2, 152 P.3d 165, 171. On appeal, this Court assumes "plenary independent and non-deferential authority to reexamine a trial court's legal rulings." *Kluver v. Weatherford Hospital Auth.*, 1993 OK 85, ¶ 14, 859 P.2d 1081, 1084.

## ANALYSIS

¶ 12 On appeal the Department asserts the Legislature's intent was clear in applying the provisions of SORA retroactively. This issue, however, has recently been addressed by this Court.

¶ 13 Since this appeal was filed, this Court issued opinions in *Starkey v. Oklahoma Department of Corrections*, 2013 OK 43, 305 P.3d 1004 and *Cerniglia v. Oklahoma Department of Corrections*, 2013 OK 81, —— P.3d ——, 2013 WL 5470632. In *Starkey* this Court held the 2007 SORA level assignments which were enacted after Starkey entered Oklahoma were to be applied prospectively and not retroactively. Like the trial court in the present case, we determined the applicable version of SORA was the one in existence when the sex offender became sub-

ject to SORA registration by entering and intending to be in Oklahoma after his or her conviction. *Starkey*, 2013 OK 43 at ¶ 82, 305 P.3d 1004. *Starkey* concerned a sex offender who was convicted in another jurisdiction and who later moved to Oklahoma. *Cerniglia*, on the other hand, dealt with a sex offender convicted in Oklahoma. In *Cerniglia* we determined "[t]he lesson to be found in *Starkey* is that the applicable version of SORA is the one in effect when a person becomes subject to its provisions." *Cerniglia*, 2013 OK 81 at ¶ 6, —— P.3d ——. We found Cerniglia, who was convicted in Oklahoma, became subject to SORA upon her conviction and therefore the version of SORA in existence at the date of her conviction controls her registration. *Cerniglia* at ¶¶ 6–7. Although not addressed in this appeal, but potentially relevant to individual plaintiffs consolidated in the trial court, *Starkey* also held the retroactive application of later enacted SORA provisions extending the registration of someone already registered would violate the ex post facto clause of the Oklahoma Constitution.[8] *Starkey* at ¶ 81.

¶ 14 The trial court's Order in this cause only focused on the "mandatory 10 year provision of registration." The Order also only pertained to those sex offenders who were either convicted or entered the state prior to the creation of the level assignment system (November 1, 2007). *Starkey's* analysis uncovered yet one more registration modification not mentioned in the Order or on appeal which may apply to some of the consolidated plaintiffs. In 2004, SB 1191 amended 57 O.S.2001, § 583, by extending the registration period to 10 years "from the date of the completion of the sentence...." 2004 Okla. Sess. Laws c. 162, § 1 (emerg. April 26, 2004). Prior to this amendment the maximum registration period was 10 years from discharge unless the offender was a habitual or aggravated offender. *Starkey* determined this statutory enactment must be applied prospectively and only to those defendants

---

7. Although not addressed in detail, plaintiffs' August 3, 2011, Petition for Temporary and Permanent Injunction, Temporary Restraining Order, and Declaratory Relief did request for those plaintiffs convicted between November 1, 1999,

and November 1, 2007, the period of registration associated with the tier-levels be declared unconstitutional and be removed.

8. Okla. Const. art. 2, § 15.

who became subject to the registry after its adoption. *Starkey* at ¶ 81.

¶ 15 The trial court's Order also held the frequency of registration during the registration period would only be one time per year. What the court appears to be referring to is the address verification process conducted by the Department of Corrections. 57 O.S., § 584. Prior to 2006, most sex offenders only needed to verify their address one time per year.[9] However, this particular group mentioned in the Order appears to include aggravated sex offenders.

 ¶ 16 Since 1997, certain predatory sex offenders must verify their address every 90 days. 57 O.S. Supp.1997, § 584(A)(5); HB 1729, 1997 Okla. Sess. Laws c. 260, § 5. In 1998, the term "predatory" in § 584(A)(5) was changed to "habitual." HB 3144, 1998 Okla. Sess. Laws c. 347, § 2. In 1999, the term "aggravated" was added with "habitual" so both types of sex offenders (habitual and aggravated) must verify their address every 90 days. HB 1390, 1999 Okla. Sess. Laws c. 336, § 3. There are many other such registration requirements found in § 584 which pre-date the 2007 SORA amendments. For the same reasons we held the provisions of SORA in effect upon a person being convicted in Oklahoma or entering Oklahoma are the only SORA provisions that shall apply to the sex offender, we hold the frequency of SORA verification in effect at that time is also the applicable provision. The correct registration requirements to apply are those in effect when the sex offender was either convicted in Oklahoma or when a sex offender convicted in another jurisdiction enters Oklahoma and becomes subject to those registration requirements. We therefore, reverse the trial court's Order applying a blanket one-year registration frequency to the consolidated plaintiffs who must continue registering.

¶ 17 We therefore affirm the trial court's Order which held legislative enactments or amendments to SORA cannot be applied retroactively to the plaintiffs. We reverse the trial court's application of a blanket one-year

registration frequency to all consolidated plaintiffs who were not immediately removed from the registry. We remand the matter to the trial court for a determination of the correct registration provisions for each of the consolidated plaintiffs in light of our holdings in *Starkey* and *Cerniglia,* supra. The record herein is silent as to the individual consolidated plaintiffs' factual circumstances, with the exception of Luster. Therefore, we cannot make a determination as to which specific provisions of SORA would apply to each individual consolidated plaintiff. On remand the trial court is directed to review the individual consolidated plaintiffs' cases in order to determine the applicable versions of SORA for each of the plaintiffs consistent with our holdings.

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

¶ 18 COLBERT, C.J., REIF, V.C.J., KAUGER, WATT, EDMONDSON, COMBS, and GURICH, JJ., concur.

¶ 19 WINCHESTER and TAYLOR, JJ., dissent.

¶ 20 TAYLOR, J., with whom WINCHESTER, J., joins, dissenting.

I dissent for the same reasons that I stated in my dissent in *Starkey v. Oklahoma Department of Corrections,* 2013 OK 43, 305 P.3d 1004.

9. SB 1755, 2006 Okla. Sess. Laws c. 284, § 9, amended 57 O.S.2001, § 584, as last amended by § 1, of Enrolled SB 1707 (2006), to require the

Department of Corrections to conduct sex offender address verifications semi-annually rather than annually.